## Dorney Coal Company v. Pennsylvania Manufacturers' Association Casualty Insurance Company

*Getz, Perkin & Twining*, for plaintiff.
*Butz, Steckel, Hudders & Rupp*, for defendant.

DIEFENDERFER, J., March 12, 1951.—Plaintiff instituted suit against defendant and the jury returned a verdict for plaintiff in the amount of $2,400. Defendant filed a motion for judgment notwithstanding the verdict which is presently before the court.

The facts substantially are as follows:

On June 8, 1948, Charles A. Souders, now deceased, an employe of plaintiff, was driving one of plaintiff's trucks toward Allentown near Bittner's Crossing Bridge on State Highway No. 100. As he approached the bridge he passed a truck owned and driven by one

Robert Pusch who was also going toward Allentown. At the same time one Donald L. Messersmith was driving a truck owned by him toward the bridge and the Dorney Coal and Pusch vehicles. Souders and Messersmith collided head-on and Pusch, almost simultaneously, collided with the rear of the Dorney Coal truck. Souders and Messersmith were killed in the collision, but Pusch survived, although injured. The Dorney Coal and Messersmith vehicles were destroyed, and the Pusch truck was extensively damaged.

Defendant in March 1948 had sold to plaintiff a policy of insurance which limited defendant's liability for personal injuries to $100,000 for each person and $300,000 for each accident. Defendant's property damage liability was limited to "Five Thousand Dollars ($5,000) each accident". The policy was in force at the time of the collision. The insurance company reserved to itself the privilege to ". . . make such . . . settlement of any claim or suit as it deems expedient."

Sometime later the administratrix and widow of Messersmith instituted an action against Dorney Coal Company to recover damages for the death of Messersmith, under both the Wrongful Death and the Survival of Action Statutes. Plaintiff in that action demanded judgment for $100,461.50, which amount did not include any claim for property damages. Thereafter, negotiations were held between E. G. Scoblionko, attorney for the administratrix, and Charles M. McCarthy, the assistant claims manager for defendant. At their first meeting, among other things, they discussed the property damages involved. (At the trial of this case Dorney Coal Company agreed that the property damage to the Messersmith truck amounted to between $5,000 and $5,300. Dorney Coal Company does not agree, however, that this information is relevant.) After further negotiations between E. G. Scoblionko, and McCarthy, the Mesersmith case was settled for

the "lump sum" of $17,000. In the settlement no agreement was suggested or entered into that the property damages in the Messersmith case should or were to be settled for any figure at all. This is the undisputed testimony in this case, and the positive evidence adduced by both parties.

Pusch, also, brought an action against Dorney Coal Company for his personal injuries and property damage. The insurance company took the position that the property damages claimed by Pusch exceeded the amount of property damage covering remaining to Dorney Coal Company under its policy. Defendant, here, had unilaterally allocated the $17,000 settlement in the Messersmith case as follows: For a maximum claim of $5,300 for damages to the truck, the sum of $4,500, and for the loss of life for which $100,000 had been claimed the sum of $12,500. The draft by which the $17,000 was paid provided that sum was "In full settlement and satisfaction of all claims arising out of accident of 6/8/48" and contained on the bottom thereof, in addition to other symbols, "charge to AL $12,500, APD $4,500". The draft was accepted by the administratrix and her attorney. The property damages in the Pusch case were later settled for $2,900, of which the insurance company contributed $500 and Dorney Coal Company $2,400 without prejudice to its right to seek full reimbursement from the insurance company on the policy issued to it.

This action was then instituted by plaintiff to recover the $2,400 from defendant. The jury returned a verdict for plaintiff in that sum and also returned a special verdict, answering "No" to this question:

Did Pennsylvania Manufacturers Association Casualty Insurance Company and E. G. Scoblionko, attorney for Edna M. Messersmith, individually and as administratrix of the estate of Donald L. Messersmith, deceased, make settlement of the claim for property

damages to the Messersmith truck in the amount of $4,500?

Essentially it resolves itself into a determination whether or not a notation "Charge to APD $4500" appearing on the draft upon which a settlement was made in the amount of $17,000, indicates a final settlement as to property damage.

The only evidence in this case upon which defendant can support the motion for judgment notwithstanding the verdict is the notation on the draft whereby the company itself charged to APD the sum of $4,500.

The parties who settled this case testified that at the final meeting covering the disposition of this claim no amounts were ascribed to property damages.

It is true defendant could make any settlement it deemed expedient. All the facts clearly show that there was no separate property damage settlement for $4,500 or any other amount. Since it appears to be a unilateral company allotment of the amount of $4,500 to APD it is hardly conceivable that it would be binding as a settlement for the property damage. There was no definite meeting of the minds concerning this factor. An actual offer to compromise is essential to a valid compromise and settlement. There was a lump sum settlement here with no specific allocation.

It is recognized that under the statutes regulating casualty insurance companies the companies are required to allocate their losses in conformity to the statute (Act of May 17, 1921, P. L. 789, 40 PS §111 et seq.). It is submitted however, that these regulations refer to methods of accounting for losses and accumulations of reserves and have nothing to do with the adjustment, compromise, and settlement of claims. The entries made on the draft in question were probably made for this purpose and for defendant's facility in its bookkeeping. As such they have no validity nor are they evidence in determining whether or not a

*settlement* of the property damages in the Messersmith case was made in the amount of $4,500. Whatever may be the policy of the law in reference to regulating the bookkeeping of insurance companies, that policy has no reference to the relationships which an insurance company maintains with its policyholders nor to the evidence of its settlements with claimants.

And now, March 12, 1951, it is ordered and decreed that the motion for judgment notwithstanding the verdict is denied.